IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KIMBERLY B. SIDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV674 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kimberly B. Sides ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on October 3, 2013, alleging a disability onset date of January 1, 2012 in both applications. (Tr. at 12, 213-220.)[1] Plaintiff later amended her alleged

---
[1] Transcript citations refer to the Administrative Record [Doc. #9].

onset date to November 16, 2012. (Tr. at 12.) Her applications were denied initially (Tr. at 73-96) and upon reconsideration (Tr. at 97-128). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 164-65.) Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing on March 21, 2016. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her amended alleged onset date through August 31, 2016, the date of the administrative decision. (Tr. at 22.) On June 9, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

2

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 14.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Lumb[a]r degenerative disc disease with scoliosis; pain disorder with psychological factors; chronic obstructive pulmonary disease (COPD); depression; anxiety; and hypertension.

(Tr. at 14-15.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with further limitations. (Tr. at 16-17.) Specifically, the ALJ found that Plaintiff

> can lift, carry, push [and] pull up to 20 pounds occasionally and 10 pounds frequently as well as stand and walk for 6 hours out of an 8-hour workday and

5

sit up to 6 hours out of an 8-hour workday. However, she requires the freedom to alternate between si[t]ting and standing/walking every 15 minutes throughout the workday without going off task. She can operate [f]oot controls bilaterally on an occasional basis. She can also occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and occasionally engage in overhead reaching bilaterally. She must avoid even moderate exposure to hazards such as the operational control of moving machinery and working at unprotected heights. She must also avoid even moderate exposure to pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She is capable of performing simple, routine tasks with simple, short instructions in a job that has no pace or production requirements, involves only routine changes in the work setting and requires the claimant to make only occasional work-related decisions. She can also handle occasional contact with supervisors, coworkers, and the general public.

(Tr. at 17.) The ALJ acknowledged that, at step four of the analysis, there was an unresolved conflict as to whether Plaintiff could perform her past relevant work. (Tr. at 21.) However, the ALJ further found that any such conflict was irrelevant in light of his step five determination that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 21-22.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 22.)

Plaintiff now challenges the ALJ's RFC assessment. In particular, Plaintiff contends that the ALJ erred by (1) failing to give controlling weight to the opinion of her treating physician, Dr. Stephen Bissette, and (2) failing to properly analyze the limiting effects of her symptoms. After a thorough review of the record, the Court finds that neither of these contentions merit remand.

A. Treating Physician Opinion

Plaintiff first argues that the ALJ failed to properly weigh Dr. Bissette's medical source opinion in accordance with 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c), better known as the "treating physician rule." The Fourth Circuit has held that for claims, like Plaintiff's, filed before March 24, 2017, ALJs must evaluate medical opinion evidence in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c) and the "treating physician rule" embodied within the regulations. Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). Under these regulations, "medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)); see also 20 C.F.R. § 416.927(a)(1). While the regulations mandate that the ALJ evaluate each medical opinion presented to her, generally "more weight is given to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." Brown, 873 F.3d at 255 (quoting 20 C.F.R. § 404.1527(c)(1)); see also 20 C.F.R. § 416.927(c)(1). Thus, the ALJ generally accords the greatest weight—controlling weight—to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other

7

substantial evidence in the case record," it is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; Brown, 873 F.3d at 256; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.[4] Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Moreover, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] ... decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted). Notably, even "implicit

---

[4] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

8

assignments of weight can support meaningful review" so long as the ALJ's decision "make[s] clear that he 'recognized and evaluated the treating relationships' of medical sources." Thomas, 2012 WL 670522, at *7 (citations omitted).

In the present case, Dr. Bissette, one of Plaintiff's treating physicians at Novant Health Maplewood Family Practice, completed a form medical source statement on June 5, 2014. (Tr. at 19, 421-24.) As noted by the ALJ, Dr. Bissette posited "extreme limitations" in his report. (Tr. at 19.) In particular, he indicated that Plaintiff could lift less than 10 pounds, even occasionally, could stand and/or walk less than 2 hours in an 8-hour day, sit less than 6 hours in an 8-hour day, and was limited in pushing and pulling with all extremities due to pain. (Tr. at 421-22.) Dr. Bissette further opined that Plaintiff could never perform any postural activities and was limited to only occasional manipulative activities due to both chronic pain from her spinal condition and side effects from her medication. (Tr. at 422-23.)

Although the ALJ acknowledged the relevance of Dr. Bissette's ongoing treatment relationship with Plaintiff when considering the above restrictions, he ultimately assigned them little weight. In doing so, the ALJ first noted that Dr. Bissette's opinion provided "little explanation supporting these limitations." (Tr. at 19.) Where, as here, the opinion consists of a minimally-completed checkbox form, it is of limited probative value. See Coleman v. Colvin, No. 1:15CV751, 2016 WL 4223583, at *6 (M.D.N.C. Aug. 9, 2016), report and recommendation adopted, No. 1:15CV751, 2016 WL 5372817 (M.D.N.C. Sept. 26, 2016) (The ALJ properly assigned no weight to nurse practitioner's opinions where she provided "little-to-no explanation of the evidence used to form her opinions, which [we]re set forth either in short and conclusory letters or in a check box form, and the record lack[ed] objective medical

evidence in support of her conclusory assertions.") (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); see also McGlothlen v. Astrue, No. 7:11-cv-148-RJ, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012) (finding a form questionnaire "entitled to little weight" due to lack of explanation); Bishop v. Astrue, No. 1:10-2714-TMC, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012) (same). The ALJ also determined that the opined restrictions were unsupported by, and inconsistent with, the clinical record. (Tr. at 19.) Specifically, the ALJ considered the information Plaintiff had provided to the consultative examiner, and the ALJ further noted that "MRIs of [Plaintiff's] spine only revealed mild degenerative changes" and that she "is consistently noted to have a normal gait and a normal range of motion." (Id.)

In addition, perhaps most notably, all other medical opinions rendered in this case indicated that Plaintiff could perform medium work. (Tr. at 19-20, 79, 105, 406.) For example, the consultative examiner, Dr. Funderburk, undertook an extensive examination specifically to evaluate Plaintiff, and found that there was no back pain or tenderness, that Plaintiff had normal gait and station, that she had 5/5 motor strength with adequate muscle bulk and tone, that there were no sensory deficits, and that "based on the formal testing and observation of the claimant's spontaneous actions," her maximum lifting/carrying capacity was 50 pounds occasionally and 25 pounds frequently, and her maximum standing and walking capacity was up to six hours in an eight-hour workday, with no need for an assistance device. (Tr. at 405-07.) The ALJ specifically noted that "Dr. Funderburk limited [Planitiff] to a medium work level with frequent postural maneuvers." (Tr. at 19.) The ALJ gave this opinion "partial

weight" but "further limited [Plaintiff] to light work with additional limitations" out of an "abundance of caution." (Tr. at 20.)[5] In addition, the non-examining state agency physician, Dr. Ellen Huffman-Zechman, reviewed Plaintiff's medical records and Dr. Funderburk's opinion and noted that Plaintiff's labwork, nerve conduction study, and brain MRI were all negative, and noted that on examination Plaintiff had full range of motion throughout, full strength, normal gait, normal strength, intact reflexes and intact sensation. (Tr. at 107.) Dr. Huffman-Zechman concluded that Plaintiff's reports of functional limitations were not well supported by the evidence, and Dr. Huffman-Zechman opined that Plaintiff could lift 25 pounds frequently, could lift 50 pounds occasionally, and could stand or walk for 6 hours of an 8-hour workday. (Tr. at 105.) The ALJ again gave this opinion partial weight and noted that "in the abundance of caution I further limited [Plaintiff] to light work with other limitations." (Tr. at 20.)

In short, the ALJ in the present case provided legally-sufficient reasons, supported by substantial evidence, for discounting Dr. Bissette's opinion, including (1) the conclusory nature of the opinion itself and (2) its lack of support in, and lack of consistency with, the objective medical evidence, including the treatment notes and other relevant evidence in the record. Accordingly, the Court finds no error.

B.  Symptom Evaluation

In a related, and often overlapping, argument, Plaintiff next contends that substantial evidence fails to support the ALJ's evaluation of the limiting effects of Plaintiff's symptoms.

---

[5] The RFC also includes additional limitations, such as the freedom to alternate sitting and standing at 15 minute intervals, which appear to be based largely, if not entirely, on Plaintiff's subjective complaints.

11

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16–3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16–3p"); see also 20 C.F.R. § 404.1529.4 In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594–95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b) ). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

12

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 18.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2), 416.929(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based

13

on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c)(4), § 416.929(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16–3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities .... In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR 16–3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision. With respect to Plaintiff's degenerative disc disease with scoliosis and pain disorder, the ALJ noted that an MRI of Plaintiff's spine "showed relatively mild lumbar degenerative disc disease," and "only small disc protrusion." (Tr. at 18, 447.) The ALJ also noted that the same record documented that Plaintiff retained "full motor function" despite her spinal issues. (Id.) Although Plaintiff occasionally exhibited abnormal clinical findings, including several positive straight leg raising tests and a "slightly unsteady" gait (Tr. at 336, 343, 379, 445), the ALJ noted that the record generally reflects that Plaintiff had "a normal range of motion in all her extremities, normal strength, normal gait, and 5/5 strength." (Tr. at 18, 379, 445, 460, 462). In addition, as the ALJ's decision reflects, at her February 15, 2014 consultative examination, Plaintiff was "noted to be ambulatory, self-sufficient, and able to attend [to] her personal needs." (Tr. at 18, 403.) Plaintiff "reported no back tenderness during the examination, was able to tandem walk, able to approach and sit on the examination table without difficulty." Although Plaintiff alleges that she requires a cane to ambulate, the ALJ also noted that Plaintiff was able to walk normally and perform all requested maneuvers throughout her consultative examination "without an assistive device[] of any kind." (Tr. at 17, 18, 403, 405.) The ALJ also noted that "an MRI and nerve studies were negative and [her] gait was normal in other records." (Tr. at 18.) Finally, the ALJ noted that Plaintiff's "treatment has been essentially routine and conservative," and Plaintiff is "often simply advised to continue her medication regimen." (Tr. at 18, 58-59.) Ultimately, the ALJ

15

limited Plaintiff to light work with myriad postural limitations based in part on her subjective reports of pain. (Tr. at 19-21.)

In terms of Plaintiff's other physical impairments, namely COPD and hypertension, the ALJ acknowledged that Plaintiff has experienced instances of wheezing and high blood pressure readings due to these conditions. However, the ALJ also noted that Plaintiff's blood pressure readings spiked when she was non-compliant with her medication and that her COPD is exacerbated by continuing to smoke a pack and a half of cigarettes per day. The ALJ further noted that despite her non-compliance, "later records show that [her] hypertension is noted to be controlled with adequate blood pressure control." (Tr. 18-19, 524, 529.) The ALJ also noted that "the record consistently shows [Plaintiff] to be in no respiratory distress" and "[i]n other examinations, [her] lungs and breathing are noted to be normal and clear." (Tr. at 19, 336, 453, 445). Moreover, Plaintiff alleges no additional limitations stemming from these impairments beyond the limitations regarding limited exposure to hazards and pulmonary irritants set forth in the RFC.

Finally, regarding Plaintiff's mental impairments, the ALJ recounted Plaintiff's diagnoses of depression, anxiety, and pain disorder with psychological features and included them among Plaintiff's severe impairments at step two of the sequential analysis, thereby acknowledging that these impairments impacted her ability to perform basic work activities. (Tr. at 14-15, 18, 19.) The ALJ further noted that Plaintiff "never sought or received treatment from a specialist; all treatment has been rendered by a general practitioner," and she has had

"no formal mental health treatment for her psychiatric issues." [6] In addition, the ALJ noted that in other treatment records, Plaintiff's "depression is noted to be stable with medication," and her "mood, affect, and behavior are consistently noted to be normal." (Tr. at 19.) Finally, with respect to the consultative psychological examination, the ALJ noted that

> While [Plaintiff] has described daily activities which are very limiting, [h]er activities she noted to the consultative examiners are daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For instance, she reported that she is able to prepare meals without assistance and go shopping for food, clothing and other essentials. She also reported that she gets along well with supervisors and coworkers and is close with her family. Moreover, her concentration and pace was observed to be within normal limits. In another consultative examination, [Plaintiff] reported that she can attend to her personal needs and is self-sufficient. Therefore, overall while the claimant alleges a number of mental limitations, the record suggests otherwise. [7]

---

[6] Plaintiff contends that she could not afford mental health treatment, and that any consideration of her failure to get mental health treatment was improper, since a claimant may not be penalized for failing to seek treatment she cannot afford. See Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). However, in this case, the ALJ simply noted the nature of the treatment Plaintiff did receive and whether the providers giving the diagnoses were specialists. The ALJ also noted the conservative recommendations of Plaintiff's providers, Plaintiff's improvement on medication, and her normal examinations with her primary care provider with regard to her mental health issues. Finally, the ALJ considered the opinion of the consultative psychological examiner, who – in contrast to Plaintiff's providers – was a specialist. These are all appropriate considerations for evaluating the medical evidence that was presented, and there is no basis to conclude that Plaintiff was penalized for failing to seek treatment that she could not afford.

[7] Plaintiff contends that the ALJ improperly relied on her activities of daily living to find that she was able to perform light work on a sustained basis. On this issue, Plaintiff notes that the ability to perform some daily activities does not mean that she could perform those activities 40 hours per week. See Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018) ("On remand, the ALJ should consider not just the *type* of Woods's daily activities, but also the *extent* to which she can perform them in assessing her credibility.") However, in this case, the ALJ considered Plaintiff's activities of daily living specifically with regard to her alleged mental limitations and with regard to the contrast between the information she provided to the consultative examiners and the information she provided at the hearing. For example, the ALJ noted that Plaintiff had reported to the consultative examiners that she could prepare meals without assistance, could go shopping for food, clothes and essentials, could get along well with supervisors and coworkers and is close to her family. The ALJ noted that these reported activities were not consistent with Plaintiff's testimony at the hearing that she does not leave the house, cannot do laundry or grocery shopping, and does not get along with other people. Thus, in assessing Plaintiff's credibility, the ALJ considered the fact that Plaintiff's representations to the consultative examiners were not consistent with Plaintiff's representations at the hearing, and the ALJ credited the information provided to the consultative examiners and relied on the conclusions of those medical professionals. (Tr. at 15-16, 17-18, 19, 20).

(Tr. at 19, 391-401, 403-07.) Nevertheless, the ALJ included mental limitations in the RFC beyond those opined by any physician or psychologist, largely based on Plaintiff's testimony. (Tr. at 19-20.)

Ultimately, to the extent that the ALJ's conclusions were contrary to Plaintiff's testimony, the ALJ made a determination regarding Plaintiff's symptoms after considering Plaintiff's testimony and the applicable factors at length. The ALJ's discussion clearly takes into account Plaintiff's "medical history, medical signs, and laboratory findings" as well as the factors set out in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), such as the extent of Plaintiff's treatments and her daily activities. Plaintiff has not shown how this symptom evaluation was improper or how the ALJ's determination was unsupported by substantial evidence. In fact, Plaintiff relies almost entirely on the discounted opinion of Dr. Bissette and her self-reported symptoms as recorded in her treatment records. As discussed *supra*, the ALJ fully considered and evaluated this evidence. To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the

relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, and supported that explanation with substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of July, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge